IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS

**TIMOTHY L. HOLLOWAY,**

    Plaintiff,

v.                                                                      **Civil Action No. 2:17-CV-74**
                                                                        **(BAILEY)**

**JOE COAKLEY, et al.,**

    Defendants.

## ORDER DECLINING TO ADOPT REPORT AND RECOMMENDATION

On this day, the above-styled matter came before this Court for consideration of the Report and Recommendation of United States Magistrate Judge Michael John Aloi [Doc. 110]. By Local Rule, this action was referred to Magistrate Judge Aloi for submission of a report and a recommendation ("R&R"). Magistrate Judge Aloi filed his R&R on February 7, 2018, in which he considered the plaintiff's Motion for Temporary Restraining Order, Preliminary Injunction, and Sanctions [Doc. 85], filed November 8, 2017, and recommended that this Court: (1) deny the plaintiff's motion for a temporary restraining order; (2) grant the plaintiff's motion for a preliminary injunction and enjoin the defendants from transferring the plaintiff; and (3) deny the plaintiff's motion for sanctions as moot. The Government filed Objections [Doc. 116], on February 21, 2018.

## BACKGROUND

Plaintiff Timothy Holloway is currently serving a federal life sentence at USP Hazelton. The underlying action generally arises from an assault that occurred at the prison on June 29, 2015, in which security footage shows the plaintiff and four other

inmates entering a cell with another inmate, where another inmate was seriously injured. The assaulted inmate suffered "severe head trauma and a broke L-4 vertabrae." [Doc. 27-1]. An investigation was conducted into the assault, and Holloway and the three other inmates (Sparks, Lighthill, and Cox) were detained in the Special Housing Unit ("SHU") at Hazelton for five months. An Inmate Investigation Report determined that all of the inmates could be returned to the general population without issue, and thus all four inmates were returned to the general population in November 2015. Holloway remained in the general population until June 2016, when contraband items (specifically, nine zip-ties in the color used to secure hatches) were found in his cell during a routine search. Holloway and his cellmate, Justin Dawson ("Dawson"), were transferred to the SHU.

Both were brought before the Disciplinary Hearing Officer ("DHO") for "escape paraphernalia" write-ups. Dawson claimed ownership of the zip-ties and was found guilty; accordingly, Holloway's charge was dismissed. Dawson was released from the SHU a week later, but Holloway remained in the SHU, where he is currently held. During his time at USP Hazelton, Holloway has also been disciplined for possessing drug paraphernalia, and an incident occurred where Holloway "was influential in causing another prisoner to request protective custody in order to avoid the threat of physical violence." [Doc. 104-4, p. 2].[1] Lieutenant Eric Howell, a BOP employee at USP Hazelton, states in his affidavit

---

[1] While the specific language in question could be interpreted as merely informing the individual that he could be subject to harm, this Court is not in a position to second-guess prison administrators who have greater access to the relevant information, experience dealing with such situations, and a need to make practical decisions in the administration of a prison. Further, the record reflects that the plaintiff also stated that, "He is a rat, he should of known better than try to come out here. He can not walk here." [Doc. 104-1, p. 63]. The statements came about after prison administrators spoke to Holloway as "an inmate of influence amongst the independent white inmates at USP Hazelton." Id.

2

that the staff at USP Hazelton, based on the totality of their observations of Holloway's behavior, consider him to be a potential escape risk. Specifically because, "Holloway has repeatedly requested work assignments on the facilities crew, which would provide access to locations and equipment that could be used to facilitate an escape," "Holloway has been observed monitoring the operation and timing of entrance doors," "Holloway possessed a radio that appeared to be altered to intercept communications among USP Hazelton employees," and the discovery of the aforementioned zip ties.

A case was opened concerning the assault on February 18, 2016, after Assistant United States Attorney Andy Cogar ("AUSA Cogar") indicated that the Government intended to indict the plaintiff and the other inmates involved. Holloway was appointed counsel in the matter, Deanna Pennington. A plea agreement was offered to all of the defendants, which the defendant declined to accept. Holloway states that Ms. Pennington informed him that if he accepted the pre-indictment plea deal, that AUSA Cogar would "grease the wheels" to get him out of the SHU. While the Government did not ultimately proceed to indict any individuals in the assault, the BOP ultimately sanctioned him for assault with serious injury. The plaintiff is currently appealing this determination.

On June 25, 2017, Holloway filed a Motion for Change of Custody [Doc. 26], stating that he had been referred for transfer to the Special Management Unit ("SMU") at Lewisburg, Pennsylvania, and requesting that the Court intervene and place him in the custody of the Marshals Service or another federal institution. Based upon the record, it appears that the plaintiff was referred for transfer to an SMU in August of 2017, and is held in the SHU pending "disposition of this request." [Doc. 104-1]. Holloway has since been appointed new counsel, Lydia Milnes, and has filed an Amended Complaint [Doc. 93],

3

which clarifies the relief sought. Holloway has brought two claims. The first is a *Bivens* claim against the named parties in their official capacities, and seeks, in relevant part, injunctive relief. The second is a 28 U.S.C. § 1983 claim for monetary relief against the named parties in their personal capacities. The plaintiff filed a Motion for Temporary Restraining Order, Preliminary Injunction, and Sanctions [Doc. 85] on November 8, 2017. The plaintiff seeks a preliminary injunction to prevent the Bureau of Prisons from transferring him to the SMU at Lewisburg, Pennsylvania, and ultimately a mandatory injunction to release him from the special housing unit into the general population [Doc. 85].

In his R&R, Magistrate Judge Aloi concludes that the plaintiff: (1) "appears to have a likelihood of success on the merits with what is known to the Court at this time"; (2) is likely to suffer irreparable harm to his ability to proceed with this matter and confer with counsel based on past difficulty between the plaintiff, the BOP staff, and plaintiff's counsel in arranging phone calls and access to legal materials, and based upon the risk of physical and mental injury that the plaintiff alleges; (3) has shown that the balance of equities tips in his favor, because the BOP would only be required to keep the plaintiff in the SHU; and (4) has shown that the public interest is in "facilitating its citizens' right of access to the courts and to counsel, and to ensure that constitutional rights of its citizens are upheld." [Doc. 110]. As such, the magistrate judge recommends that this Court grant the plaintiff's motion for a preliminary injunction, deny the motion for a temporary restraining order as moot, and deny the motion for sanctions. The Government filed timely Objections [Doc. 116].

## STANDARD

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. Further, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, failure to file timely objections constitutes a waiver of *de novo* review and the right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Here, objections to Magistrate Judge Aloi's R&R were due within fourteen (14) days of receipt, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. The Government filed its Objections [Doc. 116] on February 21, 2018. Because the Court has determined that the recommendation below is clearly erroneous, it will not address the Government's specific objections.

## ANALYSIS

The plaintiff requests an injunction against transfer to the SMU, arguing in support that: (1) the transfer would cause irreparable harm because it would interfere with his ability to seek a mandatory injunction to transfer him to the general population of the prison, be a continuation of the violation of his rights, and interfere with his ability to confer with counsel; (2) he is likely to succeed on the merits; (3) the harm to the defendants is minimal

because they would only be required to maintain the status quo; and (4) the protection of his constitutional rights is in the public interest [Doc. 85]. On review, this Court concludes that the plaintiff has not met his burden to show that injunctive relief is proper.

To obtain injunctive relief, the plaintiff must demonstrate:

(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.

*The Real Truth About Obama, Inc. v. Federal Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), vacated on other grounds 130 S.Ct. 2371; see also *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7 (2008). For relief to be appropriate, "all four requirements must be satisfied." *Real Truth*, 575 F.3d at 346.

"The party seeking the injunction bears the burden of providing a sufficient factual basis . . . by offering some proof beyond the unverified allegations in the pleadings." *Imagine Medispa, LLC v. Transformations, Inc.*, 999 F.Supp.2d 862, 868–69 (S.D. W.Va. 2014) (Copenhaver, J.). Further, "the weight to be accorded affidavit testimony is within the discretion of the court, and statements based on belief rather than personal knowledge may be discounted." *Id.* at 869 (citations omitted); *G.G. ex rel. Grimm v. Gloucester Cty. Sch. Bd.*, 822 F.3d 709, 725 (4th Cir. 2016) ("[A]dmissible evidence may be more persuasive than inadmissible evidence in the preliminary injunction context.").

The grant of a preliminary injunction is "an extraordinary remedy involving the exercise of a very far-reaching power, which is to be applied only in the limited circumstances which *clearly* demand it." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1992) (internal quotation and citation omitted) (emphasis

6

added). Finally, the Supreme Court has repeatedly stressed that injunctive relief should be granted "sparingly, and only in a clear and plain case." *Rizzo v. Goode*, 423 U.S. 362, 378 (1976) (internal quotations omitted).

A. Likelihood of Success on the Merits

Under the first *Winter* factor, the plaintiff must "demonstrate that [he is] likely to succeed on the merits." *Pashby v. Delia*, 709 F.3d 307, 321 (4th Cir. 2013). The plaintiff "need not show a certainty of success," but he must make "a clear showing that [he is] likely to succeed at trial." *Id.* "Merely showing that 'grave or serious questions are presented for litigation' will not suffice." *Imagine*, 999 F.Supp.2d at 871 (quoting *Real Truth I*, 575 F.3d 342, 346–47 (4th Cir. 2009)).

The plaintiff argues that he is likely to succeed on the merits of his claims—that he was retaliated against for refusing to accept a plea agreement in the prison assault case. To prevail on a claim of retaliation, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). "In the prison context, retaliation claims are treated with skepticism because disciplinary action taken by prison officials is by definition 'retaliatory' if undertaken in direct response to prisoner misconduct." *Fisher v. Johnson*, 2017 WL 1546413, at * 6 (D. Md. April 28, 2017) (citing *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996); *Adams*, 40 F.3d at 74). Further, a plaintiff must demonstrate that "but for his protected action, he would not have been subjected to the allegedly retaliatory actions." *Berry v. McBride*, 2004 WL 3266037, at *3 (S.D. W.Va. 2004) (Faber, C.J.) (citing *Huang v. Board of Governors of University*

7

*of North Carolina*, 902 F.2d 1134, 1140 (4th Cir. 1990)).

The plaintiff has not shown that he is likely to be successful on the merits. Prisoners indeed have a constitutional right of meaningful access to the courts, and prison officials may not retaliate against a prisoner for the decision to exercise such right. However, a prisoner who asserts a claim of retaliation must show that he was deprived of a constitutional right as the result of the retaliatory conduct. *Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978). The plaintiff has made no such showing. The plaintiff asserts, correctly, that he has a right to reject a plea agreement and instead proceed to trial. The plaintiff alleges that he is being retaliated against for exercising that right and is being kept in the SHU, and being transferred to the SMU, as a result. While the plaintiff alleges that he is being retaliated against by being kept in administrative segregation and by being recommended for transfer to the SMU, he has not made a showing that this would not be occurring but-for his decision not to accept the plea agreement. As the Fourth Circuit has noted, bare assertions of retaliation are insufficient to support a claim of constitutional violations.

Moreover, the defendants have provided a bevy of evidence to demonstrate that they would have taken the same action but-for the plaintiff's decision not to accept the plea agreement. They state, at various points, the different reasons why the plaintiff has been designated for SMU transfer—the plaintiff is believed to be involved with gangs in the prison,[2] a serious assault, and other disciplinary infractions, and prison administrators have

---

[2] While the BOP has not officially designated the plaintiff as being a gang member, prison personnel at USP Hazelton clearly consider him to be affiliated with or "influential" to a certain group of inmates such as to warrant concern.

8

observed him engaging in behaviors that cause them to fear he might attempt an escape.

While the different members of the prison staff and the BOP may provide different reasons for why the plaintiff has been held in the SHU and has been designated for transfer to the SMU, that does not invalidate those reasons—rather it emphasizes that it is not simply the assault or any single factor that caused the designation, but the combination thereof. By arguing otherwise, the plaintiff asks this Court to second-guess the penological decisions that prison administrators make in the interests of the safety and security of inmates and the staff. It is well-accepted that courts afford federal prison administrators wide berth in deciding issues of prison management and security, and although courts will intervene where a clear violation of constitutional rights is occurring, this is no such case. *See, e.g.*, *Hewitt v. Helms*, 459 U.S. 460, 467 (1983) (noting the wide discretion of prison administrators over institutions); *McKune v. Lile*, 536 U.S. 24, 40 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise."); *Reno v. Koray*, 515 U.S. 50, 63 (1995) (noting that the BOP has "full discretion" to control conditions of confinement, including "summary reassignment to any other penal or correctional facility within the system."); *Moody v. Daggett*, 429 U.S. 78, 87 n.9 (1976) ("Congress has given federal prison officials full discretion to control conditions of confinement, such as prisoner classification . . ."); *Bell v. Wolfish*, 441 U.S. 520, 547 (1979) (prison administrators are entitled to "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.").

However, even assuming that the plaintiff's allegation of retaliation is true, the

9

plaintiff has not been deprived of any constitutional right as a result. First, it is clear that the plaintiff does, in fact, have access to the courts and to his attorney—while there has been difficulty in arranging phone calls, this is an unfortunate eventuality given that the call is being arranged between a busy attorney and a busy member of the prison staff—evidenced by the appointment of counsel in this matter and the pace at which the matter is now proceeding. Second, the plaintiff has no constitutional right to remain in the general population or not to be transferred to the SMU. *See, e.g.*, **Meachum v. Fano**, 427 U.S. 215, 223–24 (1976).

Finally, there is no other credible allegation of the deprivation of a constitutional right that has been pled, particularly given that the record reflects that the plaintiff has received the prescribed hearings. *See* **Sandin v. Conner**, 515 U.S. 472, 484 (1995) (When a punishment does not enhance the original sentence, protected interests are generally limited to "freedom from restrain [that] . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."); **Robinson v. Norwood**, 535 F. App'x 81, 83–84 (3d Cir. 2013) (noting that placement in SMU Lewisburg does "not constitute a dramatic departure from the accepted standards for conditions of confinement such that due process [is] implicated."). As such, there is not a "clear showing" of likely success on the merits of the underlying claim, and a preliminary injunction is inappropriate on this ground. *Winter*, 555 U.S. at 22.

B. Likelihood of Irreparable Harm

Under the second *Winter* factor, the plaintiff must demonstrate that he is "likely to suffer irreparable harm in the absence of preliminary relief." *Id.* at 20. "[A] preliminary

10

injunction will not be issued simply to prevent the possibility of some remote future harm." *Id.* (citation omitted); *Curtis v. Ramsey*, 2014 WL 4296683, at *3–4 (S.D. W.Va. 2014) ("A mere possibility of harm will not suffice to support the granting of a preliminary injunction.") (Copenhaver, J.). The plaintiff must show irreparable harm that, in the absence of injunctive relief, is "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 812 (4th Cir. 1991); see also *Sabatino v. Pill*, 2017 WL 4079402, at *5 (N.D. W.Va. Sept. 14, 2017) (Stamp, J.) ("The plaintiff must show 'that injury is certain, great, actual and not theoretical.'") (citations omitted)). Without this showing, the Court cannot grant injunctive relief. *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 360 (4th Cir. 1991).

The plaintiff contends that he will suffer irreparable harm in the absence of a preliminary injunction against transfer because the Lewisburg SMU reportedly has higher rates of inmate on inmate violence than the standard prison. The plaintiff also argues that he will suffer irreparable harm because the impending transfer would prevent him from pursuing the ultimate injunctive relief requested—a mandatory injunction in favor of transfer to the general population of the prison—and because it would interfere with his ability to confer with counsel.

It is not apparent to this Court that Holloway will suffer irreparable harm absent a preliminary injunction. While the plaintiff cites to an article addressing the risks for a mentally ill patient in the SMU and the potential for injury if assigned to an improperly screened cellmate, this is not sufficient to establish irreparable harm. In considering such questions, other courts have found that transfer to an SMU, even with allegations that the

11

plaintiff will be subject to *specific bodily injury*, have been found insufficient to support the extraordinary remedy of injunctive relief. *See, e.g.*, **Miller v. Walton**, 2015 WL 13122312, at *4 (S.D. Ill. Aug. 18, 2015) ("Plaintiff avers he will be subject to significant bodily injury by his enemies if he is transferred to a SMU, he has provided only vague generalized assertions regarding his fears"); **Tooke v. Ozmint**, 2009 WL 5062401, at *2 (D.S.C. Dec. 16, 2009) (plaintiff did not show imminent harm through allegations that placement in SMU aggravates mental health conditions). Further, the plaintiff cannot be granted prospective injunctive relief on the grounds that harm might occur or will possibly occur—a showing of actual, imminent, irreparable harm is necessary. *See* **Murray v. Rubenstein**, 2016 WL 7105869, at *2 (S.D. W.Va. Dec. 5, 2016) (Goodwin, J.); **Curtis v. Ramsey**, 2014 WL 4296683, at *3–4 (S.D. W.Va. Aug. 28, 2014) (Tinsley, M.J.) ("A mere possibility of harm will not suffice to support the granting of a preliminary injunction."); *see also* **Pickelhaupt v. Jackson**, 2007 WL 674701, at *2 (E.D. Mich. Mar. 2, 2007) (denying preliminary injunction where plaintiff argues that the transfer "would separate him from his legal advisor and frustrate his attempts to prosecute this action.").

The plaintiff's second argument—that he would be unable to pursue the requested injunctive relief—is also unavailing because transfer does not deprive a prisoner of the right to pursue injunctive relief for some arbitrary reason, but because the prisoner is no longer subject to the allegedly unconstitutional conditions and the claim is moot. A transfer away from conditions that are allegedly unconstitutional does not cause irreparable harm. However, this Court would not be divested of jurisdiction over all claims in the case of transfer—"[j]urisdiction is determined at the time an action is filed; subsequent transfers

of prisoners outside the jurisdiction in which they filed actions do not defeat personal jurisdiction." *United States v. Edwards*, 27 F.3d 564 (4th Cir. 1994). As such, this Court can not find that the plaintiff has shown any actual, imminent, and irreparable harm so as to justify injunctive relief.

C. The Balance of Equities

Under the third *Winter* factor, the plaintiff must demonstrate "that the balance of equities tips in his favor." *Winter*, 555 U.S. at 20. "In each case, courts 'must balance the competing claims of injury and must consider the effect on each part of the granting or withholding of the requested relief.'" *Id.* (quoting *Amoco Prod. Co. v. Vill. of Gambell, Alaska*, 480 U.S. 531, 542 (1987)). As this Court has previously noted, the BOP is likely to be harmed by injunctions that "would interfere with the daily execution of prison policies and practices," and "[s]uch an interference is not the place of federal courts, which do not stand in the position of overseeing the daily operations of prisons." *Dunn v. Federal Bureau of Prisons*, 2013 WL 365257, at *2 (N.D. W.Va. 2013) (Stamp, J.).[3]

---

[3] While the plaintiff asserted that *Dunn* reflected approval by this Court of an injunction against transfer if the plaintiff could show specific facts underlying claims of retaliation, this is an inaccurate statement of the case. In *Dunn*, the Court addressed the question of whether the issuance of an injunction against general retaliatory disciplinary action was proper—the question of whether issuance of an injunction against transfer was proper was previously addressed and denied. *See Dunn v. Stewart*, 2012 WL 6962987, at *1 (N.D. W.Va. 2012) (Seibert, M.J.) (noting that the previous R&R "recommending denial of the plaintiff's motion for injunctive relief, finding that pursuant to the holdings in *Bell v. Wolfish* . . . the BOP was entitled to determine where the plaintiff should be incarcerated," had been adopted as to the request for an injunction against transfer). *Dunn*, therefore, addresses only the question of whether a court may appropriately enjoin the BOP from general disciplinary actions in retaliation for filing suit. The Court determined that injunctive relief was not appropriate, noting that the plaintiff had failed to show any irreparable harm because the harms alleged were only speculative in nature—the plaintiff alleged only that retaliation for filing lawsuits was "common" and did not allege that he had ever been retaliated against for filing suit, even during the seven and a half month

13

Here, the balance of equities presently tips in favor of the defendants, because they are in a better position than the courts to determine what presents a safety concern for the prison—while it is easy for the court to simply say that the prison administrators' concerns are clearly pretextual, it ignores the Supreme Court's consistent counseling to give great deference to the experience of prison administrators, particularly when the decisions relate to security. *Turner v. Safley*, 482 U.S. 78 (1987). Further, it is far more difficult to say that the reasons for transferring the plaintiff are purely pretextual when considering the entirety of the plaintiff's record—it does not appear to be a disputed fact from the record that the plaintiff was found guilty of and disciplined for the June 2015 assault which left another prisoner with severe injuries to his head and vertabrae, has sustained various disciplinary sanctions while in custody of the BOP, has a "high" security designation, and prison staff, who are able to regularly observe the plaintiff and the occurrences within the prison, believe that he is an escape risk. As such, this Court cannot conclude that the balance of equities counsels issuance of an injunction.

D. The Public Interest

Finally, under the fourth *Winter* factor, the plaintiff must demonstrate that the "injunction is in the public interest." *Winter*, 555 U.S. at 20. "[C]ourts of equity should pay particular regard for the *public consequences* in employing the extraordinary remedy of injunction." *Id.* at 24 (quoting *Weinberger v. Romero-Barcelo*, 465 U.S. 305, 312 (1982))

---

pendency of his suit. Specifically, this Court held with regard to the plaintiff's request for an injunction against transfer that, "this Court agrees with Magistrate Judge Seibert that this Court is not in the position to interfere with the BOP's execution of its own procedures and policies, and its determinations regarding place and type of incarceration for inmates in its custody." *Dunn v. Stewart*, 5:12-CV-55, Doc. 59 (N.D. W.Va. Nov. 14, 2012) (Stamp, J.) (adopting R&R in part).

14

(emphasis added).

This matter certainly presents conflicting considerations. On one hand, the general public has an interest in ensuring that the constitutional protections afforded to the public, including those imprisoned, are vindicated; on the other hand, the public most certainly has an interest in the effective management of the prison system, both for the safety of the general public and those in the prison system, whether they be inmates or administrators. There are also serious concerns that accompany federal court intrusion into areas that Congress has specifically delegated to other authorities—particularly other branches of government, such as the BOP—and into areas in which the courts generally lack the specialized expertise and experience, like in the administration of prisons, to pass reasoned judgment.

There is a strong public interest in allowing the BOP to perform its function, and the inherent discretion that accompanies this function, without interference from the courts—particularly in such a situation presented here. While it is true that SMUs and similar units have been viewed with increasing disfavor, the facts of this case do not reflect any *extraordinary* circumstances that would justify injunctive relief; rather, they present unfortunately *ordinary* concerns of prison administration and prison life. The plaintiff's arguments in support of an injunction against transfer are not unique to him—his citation to an article about the general risks alleged by prisoners at the SMU, the sequence of the internal appellate process, and the inconvenience of a prison transfer during the pendency of litigation and away from appointed counsel are part and parcel with prison litigation and with the administration of prisons.

For this Court to rule that the extraordinary and rarely granted remedy of injunctive

15

relief is appropriate here—particularly in the context of prisons, where the Supreme Court has repeatedly cautioned deference to the experience of prison administrators—would wholly undermine the BOP and the necessary decisions it must make in the best interests of the prison staff, the inmates, and the general public. *See, e.g.*, **Winter**, 555 U.S. at 20 ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."); **Rizzo**, 423 U.S. at 378 (injunctive relief should be granted "sparingly, and only in a clear and plain case."). Given the absence of a showing of the *Winter* factors, it would be a substantial deviation from Supreme Court and Fourth Circuit precedent for this Court to order the BOP to refrain from an action that is within its sole discretion. As such, this Court cannot conclude, in light of the years of precedent counseling deference to prison administrators and the extraordinary nature of the grant of injunctive relief, that the issuance of preliminary injunctive relief would be appropriate in this matter.

## CONCLUSION

Upon careful review of the above, this Court **DECLINES TO ADOPT** the magistrate judge's Report and Recommendation **[Doc. 110]**, in so far as it recommends issuing a preliminary injunction. Accordingly, this Court **DENIES** the plaintiff's Motion for a Temporary Restraining Order, Preliminary Injunction, and Sanctions **[Doc. 85]** as to the motion for a preliminary injunction and sanctions, and **DENIES AS MOOT** the request for a temporary restraining order.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record.

16

**DATED:** March 13, 2018.

JOHN PRESTON BAILEY  
UNITED STATES DISTRICT JUDGE